This is a workmen's compensation case. Plaintiff appeals from a judgment finding him not an employee of defendant Decatur Petroleum Haulers, Inc., hereinafter called Decatur. We reverse.
The trial court heard extensive oral testimony and made finding of facts and conclusion of law. A material part of the finding of fact appears in paragraphs 2 and 3 as follows:
 "(2) The court further finds that the lease agreement between Edmonds and Decatur Petroleum provided for Edmonds to pay all costs of operating the vehicle, including the wages and other payment due by reason of owner's employment of drivers or other labor, all payroll taxes, workmen's compensation, fuel tax fees, drivers license fees, fuel, oil, gasoline, tires, parts, repair, fines or driver's salaries. That the lease further provided that the details of the operation of the leased equipment were to be vested in the driver and that Decatur Petroleum had no such authority to control except as required by law.
 "(3) It's the further finding of the court that the above terms of the lease were complied with by both parties and that the owner, Edmonds, in fact paid all of the operating expenses, including the driver's salary, and that Edmonds was the party responsible for the discipline of his driver Craig."
. . . . .
 ". . . the court having considered this issue in light of all evidence elicited during a hearing held in open court, it is therefore, the finding of this court that Jimmy W. Craig was not an employee of defendant, Decatur Petroleum Haulers, Inc. and that therefore this defendant is not liable under the provisions of the Alabama Workmen's Compensation Act to this plaintiff."
In a workmen's compensation case an appellate court looks at the record only to determine if the finding of fact of the trial court is supported by any legal evidence and if the law has been properly applied to the facts. Boatright v. Dothan AviationCorporation, 278 Ala. 142, 176 So.2d 500.
We have closely examined the entire transcript of the evidence and fail to find support for some of the material facts found by the court and which were considered by the court in application of the law.
Plaintiff was injured while driving a tractor-trailer truck loaded with gasoline. The tractor was owned by Edmonds, the trailer by Decatur. The cargo of gasoline was the property of Hunt Oil Co. There was evidence that Edmonds had leased his tractor to Decatur. The written lease was not introduced in evidence. There was considerable testimony as to its provisions.
The tendency of such evidence was as follows:
Edmonds leased the tractor to Decatur; Edmonds was to furnish a driver and pay for the fuel used by the truck; the driver was to be tested and examined by Decatur to determine his capability and qualifications under rules of the Interstate Commerce Commission (ICC) and Department of Transportation (DOT); Decatur operated *Page 1129 
under ICC and DOT rules and regulations; Edmonds was to be paid 65% of the revenue received from the operations of the tractor-trailer; trailers were the property of Decatur or others; Decatur was to carry liability insurance upon the rig.
Testimony as to the manner of operation of the parties under the lease showed the following: Plaintiff had not been an employee of Edmonds prior to the lease with Decatur; Edmonds sent him to Decatur as a prospective driver; Decatur gave him oral, written and road tests and inquired of his experience and driving record; plaintiff was returned to Edmonds with the approval of Decatur and with a recommendation as to payment for services; Decatur recommended that plaintiff be paid 20% of gross revenue per week; plaintiff was employed and began work; he was dispatched entirely by Decatur or by others to whom Decatur may have let his services; he kept daily trip logs required by Decatur and filed them with Decatur; he was authorized to charge fuel to Decatur, which was charged back to the account of Edmonds; he was directed where and when to go entirely by Decatur; he was directed by Decatur to comply with all rules of the ICC; the tractor carried the name and ICC number of Decatur; Decatur hired out the use and services of both driver and tractor to other oil companies and distributors without permission of Edmonds. Edmonds had no voice in directing the day-to-day activities of plaintiff, and had no knowledge of where he went; if Edmonds wished to locate plaintiff during working hours, he would have to contact Decatur's dispatcher; if plaintiff violated any rules of the ICC or of Decatur, he would be discharged by Edmonds or the lease would be cancelled by Decatur; Edmonds paid plaintiff 20% according to the record of his work provided by Decatur.
Much of what we found the evidence to be in the record is contrary to the finding of fact contained in the judgment of the trial court. For instance, the court found that the lease agreement provided that Edmonds pay all costs of operating the vehicle including wages and other payments due by reason of employment of drivers and other labor. As hereinbefore quoted, there were enumerated twelve items to be paid including workmen's compensation. We find no testimony or exhibit as to such matters except that of payment to driver of a percentage of receipts and the charging of gasoline to the account of Edmonds when paid for by Decatur.
The court further found that the lease provided that the details of the operation of the leased equipment were to be vested in the owner and that Decatur had no authority to control except as required by law. As we have stated, the lease was not placed in evidence, and we find the testimony as to the operations of Decatur under the lease to be contrary to the finding of fact by the court.
It is well settled law in this state that in determining whether an employer-employee relationship exists, the court looks to the right of control, either actually exercised or reserved. In the last analysis it is the reserved right of control rather than its actual exercise that provides the answer. TuscaloosaVeneer Co. v. Martin, 233 Ala. 567, 172 So. 608; C.E. Adams Co.v. Harrell, 257 Ala. 25, 57 So.2d 83. The testimony unequivocally indicates actual exercise of control by Decatur in the details of plaintiff's daily activities on the job. The tendency of the evidence is that directly or indirectly, Decatur possessed right of control under the terms of the lease.
The Workmen's Compensation Act defines an employer as any person, corporation, etc., who employs another to perform a service for hire and to whom the employer directly pays wages. Decatur contends it does not fall within the definition because it neither hired plaintiff nor paid wages to him.
An examination of cases involving determination of the existence of an employer-employee relationship indicates that though mention has been made of the statutory definition, ultimately the answer was derived from the application of the reserved right of control test. Tuscaloosa Veneer *Page 1130 Co. v. Martin, supra, and cases cited therein on page 570. This court must conclude that the statutory definition of an employer is not the only basis for determining the relationship of employer and employee for coverage under the Workmen's Compensation Act. Such definition does not strictly cover the loaned or dual employee which is recognized as covered in 1A Larson, The Law of Workmen's Compensation, § 48 (1973). We cannot accept the purpose of the legislature to limit coverage of workmen's compensation to one who is subject to control of one and serving his interest, but is paid wages or commission by another through agreement or contract.
The Supreme Court of Alabama has held that an owner-driver of a truck operating under a lease, apparently very similar to that in this case, was an employee rather than an independent contractor. Hays v. Deaton Truck Line, 264 Ala. 442,87 So.2d 825. Adams Co. v. Harrell, supra; Deaton Truck Line v. Acker,261 Ala. 468, 74 So.2d 717. The court has further held such an employee to be covered under the Workmen's Compensation Act in the case of Stevens v. Deaton Truck Line, 256 Ala. 229,54 So.2d 464. We conclude that through the reservation of the right of control over the driver in the lease between Decatur and Edmonds, plaintiff was in fact an employee of Decatur under the common law and the Workmen's Compensation Act. Such right of control is exemplified by the right of Decatur to pass upon his application for employment and subject him to tests and rules of the ICC and the Department of Transportation; the right to sublet his services to others; the right to direct every activity of his work; the right to dispatch and recall; the right to discipline him or bring about his dismissal through power of cancellation of the lease; the responsibility for his performance under ICC regulations; the fact that the only right to perform on his job was derived from the permit granted to Decatur Petroleum by the ICC.
The United States Court of Appeals, Fifth Circuit, in the case of N.L.R.B. v. Deaton, Inc., 502 F.2d 1221, cert. denied,422 U.S. 1047, 95 S.Ct. 2665, 45 L.Ed.2d 700, upheld a finding of an employer-employee relationship between Deaton and non-owner drivers operating under leases similar to that here. In that case, the court applied the right of control test as we have done here. The Supreme Courts of Florida and Mississippi have reached similar conclusions. Rainbow Poultry Co. v. Ritter Rental System,Inc., 140 So.2d 101 (Fla.); Burnham Van Service, Inc. v.Dependents of Moore, 250 Miss. 165, 164 So.2d 733.
The court finds that the finding of material fact made by the trial is not supported by the evidence. The court further finds that the court misapplied the law to the evidence when it held that the relationship of employer and employee did not exist between Decatur Petroleum Haulers, Inc. and plaintiff Jimmy Craig. We therefore reverse and remand.
REVERSED AND REMANDED.
BRADLEY and HOLMES, JJ., concur.